SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK

-------------------------------------------------------------------x

VERA GORFINKEL

Plaintiff

Index# 34172/2011

- Against -

Amended
Verified Complaint

RALF VAYNTRUB, INVAR CONSULTING LTD.
GENOMETRICA LTD and
GENOMETRICA RESEARCH, INC.,

Defendants

-------------------------------------------------------------------x

Plaintiff Vera Gorfinkel appearing by her counsel Arthur Morrison, William V. Rapp,

and Robert L. Greenberg, Esqs. for her Amended Complaint alleges as follows:

## PARTIES

1.     Plaintiff Vera Gorfinkel ("Vera") is a natural person a resident of the County of Suffolk,

Town of East Setauket, State of New York further is, and at all relevant times was an Associate Professor,

Department of Electrical & Computer Engineering, State University of New York, Stony Brook, County of

Suffolk, State of New York.

2.     Defendant Ralf Vayntrub ("Ralf") is a natural person residing at Pokrovssky Blvd. 4/17

Building 6, apt.82, City of Moscow, Russia 101000 Founder and President of the defendant Invar

Consulting Ltd and Genometrica Ltd and upon information and belief the President of Genometrica

Research, Inc.

3.     Invar Consulting Ltd upon information and belief is a corporation formed by Defendant Ralf

Vayntrub in 2005 in Vaduz, Lichtenstein, which thereafter transacted business under the name and style as

Invar Pharmaceuticals.

4.     Genometrica Ltd. upon information and belief is a foreign corporation founded in 2008, in

1

Vaduz, Lichtenstein, now located at via Cantu 8 CP 5991 Lugano CH 6901, Switzerland for development and commercialization of technology platforms capable of performing all major tests of molecular biology however, upon information and belief, regarding any patent owned by Stony Brook Foundation Inc. regarding which any of the defendants alleges it holds a license, no commercialization of a product in commerce has occurred at any time to date.

5. Defendant Genometrica Research, Inc. is a domestic corporation duly organized and existing under the laws of the State of New York.

## INTRODUCTION

6. This is an action for intentional interference with contractual relations; intentional interference with advantageous business relations; and violations of New York law prohibiting unfair and deceptive trade acts and practices stemming from defendants' anticompetitive conduct and its bad faith, knowing and intentional interference with plaintiffs employment and contractual and business relations with State University of New York at Stony Brook as a University Associate Professor in its Department of Electrical & Computer Engineering, State University of New York, Stony Brook, County of Suffolk, State of New York.

7. On or about August 2011, Defendants terminated a business relationship with Plaintiffs Husband, Boris Gorbovitski ("Gorbovitski").

8. Upon Gorbovitski's termination and also beginning on or about September, 2011, Defendant Ralf approached Plaintiff and did make threats to Plaintiff including *(see, infra,* paragraph 57) but not limited to: initiate a lawsuit against Gorbovitski for breach of fiduciary duties, initiating criminal proceedings against Gorbovitski for larceny.

2

9.  Defendant offered, as a *quid pro quo, (see, infra,* paragraph 57) that he would not take the above actions if (as extensively detailed therein and paragraph 57 is further incorporated by reference) said defendant Ralf Vayntrub threatened plaintiff with economic blackmail, informing her he had extensive influence with Stony Brook Foundation (RF) and was able to remove her as PI in her laboratory. Plaintiff could not work on Genometrica research after June, 2011 as its payments had ended. She could not spend funds allocated for her ongoing STTR project for a different purpose. Vayntrub's proposals were in violation of federal law, and would also violate Plaintiffs contract with SUNY Stony Brook and RF SUNY (collectively "SUNY") and rejected.

10. Plaintiff refused Defendant's illegal and unethical *quid pro quo.*

11. Following refusal to accede to the September, 2011 economic threats, Defendants approached SUNY and filed complaints about Plaintiff, accusing her, *inter alia,* of patent infringement.

12. Specifically, on December 16, 2011, RF SUNY's Nancy Dane au sent an E-mail to the plaintiff as Deputy to the Vice-President for Research that RF SUNY based upon a complaint by Vayntrub's Genometrica , falsely accusing her *inter alta,* of patent infringement. From January 17, 2012 until July 2012 RF SUNY shut-down the STRR Grant depriving her of summer income and halting her research but continued to pay Lab staff from their internal funds.

13. On or about July, 2012, SUNY cleared Plaintiff of all of Defendants' charges. SUNY concluded that, in the absence of any product, Plaintiff cannot infringe on a patent nor be in competition under US or NY law. Defendants' claims against Plaintiff were and are without merit.

14. During the months of December, 2011 and January and February, 2012 , Defendants' personnel went to Plaintiffs laboratory spoke to its employees and Plaintiffs colleagues, and spread false information, including but not limited to: that Plaintiff was to be

3

terminated from SUNY that the Plaintiff was engaged in illegal activities, better

opportunities by working for Defendants and not the plaintiff.

15.     Defendants' actions were calculated to interfere with Plaintiff's

business relationships and defame her character.

16.     As a direct result of defendants' actions, Plaintiff has suffered actual damages

that exceed Three Million Dollars. Further, in order to prevent serious and irreparable harm to

plaintiff, who is an employee of SUNY, defendants must be enjoined from persisting in these

wrongful acts to terminate plaintiffs employment from SUNY Stony Brook at the pay rate of

$125,053 per annum Academic Year (9 months) and $41,000 from SUNY for the summer,

17.     Further as a direct result of defendants' actions, Plaintiff's laboratory was shut

down for an extended period, causing her to lose the $41,000 from the RF for the summer

months.

18.     Further as a direct result of defendants' actions, Plaintiff has been denied the

opportunity for a promotion to a full professorship with SUNY Stony Brook at the pay rate of

$210,000, a 25% increase in pay per annum.

19.     Further as a direct result of defendants' actions, Plaintiff has been denied the

opportunity to create research, develop, and/or reduce to practice, any new intellectual

property ("IP"). The denial of opportunities denies Plaintiff the commercialization of IP,

which could provide a source of significant income to the Plaintiff and to SUNY, in excess

of two million dollars over five or more years. As an inventor of new *IP*, Plaintiff is entitled

to forty (40%) per cent of the royalties received by SUNY on any IP.

20.     Further as a direct result of defendants' actions, Plaintiff's research suffered,

perhaps irreparably, and no IP was developed based on that research.

4

# NATURE OF THIS ACTION

21.    Defendant Ralf Vayntrub, asserting to be one of the richest men in Russia claimed to plaintiff to be worth over one-hundred (100) millions of dollars, believes himself to be so wealthy and powerful that he can threaten to file false charges against the plaintiff with her employer unless she continued to undertake research projects on his behalf and on behalf of the other named defendants herein, and when plaintiff refused Ralf Vayntrub's blackmail and extortion threats, he unilaterally decided to formally assert false charges against her with her employer, Stony Brook University in order to serve his own ego and self-interest, and force compliance of his wishes by the plaintiff.

22.    Defendant Ralf Vayntrub assertions of patent infringement made to the Stony Brook Foundation, Inc. which generates substantial income for the University after years of dedicated service to the University, was humiliating, harassing, and disparaging to her career.

23.    Defendant Ralf Vayntrub—when notified plaintiff would not accede to his extortion and blackmail demands—used his economic resources to retain expensive attorneys in the commercial and intellectual property field to create and pursue a false claim of patent infringement against her with the Research Foundation of SUNY, which conduct wrongly named plaintiff.

24.    This action by Ralf Vayntrub described above charging plaintiff with patent infringement ("Claim" and/or "False Claim of Patent Infringement") and seeking a determination against her on that claim by Research Foundation of SUNY was a wrongful interference with plaintiff's right to continue to serve as an Associate Professor at Stony Brook University and receive compensation to which she is contractually entitled.

25.    The conduct of Ralf Vayntrub described above was intentional and done with malicious intent, as defendant Ralf Vayntrub was the principal and controlling officer and

5

Director of defendants Invar Consulting Ltd. and Genometrica which held licenses to certain patents owned by the Research Foundation of SUNY ("RF"), which he believed provided him with financial leverage over both Stony Brook University and RF.

26.     In fact that plaintiff was in compliance with her contract with Sony Brook University, and defendants knew no grounds existed for alleging a patent infringement. Nonetheless defendants went ahead with the false claim against her, making real Ralf Vayntrub's threat to invent a false claim with Research Foundation of SUNY would jeopardize plaintiffs $166,000 annual employment contract therefore defendants collective actions under the circumstances stated herein constituted intentional interference with contractual relations and unlawful retaliation in violation of New York law.

27.     To justify Ralf Vayntrub's extortion conduct, the remaining defendants conspired to conjure up a pretext of patent infringement and as part of those proceedings made a written request written consent in November, 2011 to add RF as a party plaintiff to a patent infringement lawsuit against plaintiff, which the RF declined to do.

28.     No finding of patent infringement occurred yet plaintiff was subject at her employment with a harassment and disparagement campaign from other faculty members.

29.     Plaintiff is informed and believes that Ralf Vayntrub commenced this false contractual and/or disciplinary action against her in order to have Research Foundation of SUNY ("RF") interfere with and provide grounds to the University to terminate Plaintiffs' rights under her annual employment agreement with Stony Brook University, Inc. because of the lucrative business relationship existing between Ralf Vayntrub and the defendants and RF.

30.     The possible loss of employment by plaintiff with the university unless she accepted the threats of extortion by the defendants, led by Ralf Vayntrub tortiously interfered with Plaintiffs' rights.

31.     Plaintiff is entitled to recover significant compensatory and punitive damages, as well as costs and attorney's fees incurred in enforcing their rights as recoverable under the contract and other amounts as a result of this conduct.

## FIRST CAUSE OF ACTION

## (Intentional Interference with Contractual Relations against Defendants)

32.     Plaintiff incorporates herein by reference each and every allegation contained in Paragraphs "1" through "31", inclusive, of this Complaint as if fully set forth herein.

33.     At all relevant times, all defendants knew of the existence of the employment agreement between Plaintiff and Stony Brook University Inc., as described above where she is an Associate Professor Department of Electrical & Computer Engineering, State University of New York, Stony Brook, County of Suffolk, and State of New York with an annual salary of $166,000.

34.     All defendants knowingly induced Research Foundation of SUNY ("RF") to (i) commence patent infringement proceedings against plaintiff and (ii) provided a copy of a complaint in the United State District Court, Eastern District of New York naming plaintiff as a defendant which conduct was humiliating, harassing, and disparaging to her career at Stony Brook University.

35.     Among other things, Ralf Vayntrub threatened to file false charges against the plaintiff with the Foundation unless she continued to undertake research projects on his behalf and on behalf of the other named defendants herein, and when plaintiff refused Ralf Vayntrub's blackmail and extortion threats, he unilaterally decided to formally assert false charges against

7

her with her employer, Stony Brook University in order and force compliance of his wishes by the plaintiff.

36. Ralf Vayntrub, acting for the defendants, instructed their counsel to commence false patent infringement proceedings against the plaintiff with Foundation; and (ii) forcing University to conduct a formal hearing to determine if plaintiff was in violation of her employment Contract and had a conflict of interest.

37. Defendants' interference, in addition to being intentional, was improper in motive and/or means.

38. Defendants' continued interference will irreparably harm her unless they are enjoined by the Court from the actions complained of herein.

39. Plaintiff has suffered substantial damages, in an amount in excess of Three Million Dollars as a result of defendants' improper and unlawful actions.

## SECOND CAUSE OF ACTION
## (Intentional Interference with Advantageous Business Relations)

40. Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs "1" through "39", inclusive, of the Complaint as if fully set forth herein.

41. Plaintiff had an existing business relationship with Stony Brook University, Inc., being a long term Associate Professor in the Department of Electrical & Computer Engineering, State University of New York, Stony Brook, County of Suffolk, and State of New York.

42. Prior to engaging in the aforementioned conduct of commencing a false patent infringement with the Research Foundation of SUNY ("RF") defendants were fully aware that plaintiff had a business relationship with the University as an Associate Professor which was economically-advantageous to her, further defendants knew plaintiff's business relationship

8

with Stony Brook University, Inc. included the fact her annual salary was $166,000 per annum and derived from funds and income provided the University by Research Foundation of SUNY with whom defendants' had contracts in the form of licenses.

43.     Defendants contacted employees at Stony Brook University working in the laboratory supervised by Plaintiff and did, *inter alia*, spread rumors, lies, and innuendo about Plaintiff, display documents relating to the aforementioned Federal proceedings, and insinuate that the laboratory would be under different management, with the purpose of causing these employees to leave the laboratory, leave SUNY, and/or take employment with Defendants.

44.     Defendants' knowingly, intentionally, wrongfully, and maliciously interfered with plaintiffs advantageous relationships.

45.     Defendants' actions have harmed plaintiff's business relationships with both Stony Brook University Inc. and Research Foundation of SUNY and in her profession as Professor in the field of Electrical & Computer Engineering and plaintiff's loss of these advantageous business relations resulted directly from defendants' improper and unlawful actions

46.     Plaintiff is without an adequate remedy at law, because defendants, continued interference will irreparably harm her unless defendants' are enjoined by the Court from the actions complained of herein.

47.     Plaintiff has suffered substantial damages, in an amount to be determined at trial, as a result of defendants' improper and unlawful actions.

48.     The conduct of Defendants as alleged herein was purposeful and intentional and was engaged in for the purpose of depriving plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct that subjected plaintiffs to cruel and unjust hardship

9

In conscious disregard of her rights, and was performed with fraud, oppression or malice so as to justify an award of exemplary or punitive damages against such defendants in an amount according to proof at trial.

## THIRD CAUSE OF ACTION

### (Defamation of Character)

49.     Plaintiff Vera Gorfinkel hereby realleges and incorporates by reference the foregoing paragraphs "1" through "48" of the Complaint as if fully set forth herein.

50.     Plaintiff Vera Gorfinkel was and is, at all relevant times, a natural person

51.     Upon information and belief, defendant Ralf Vayntrub and is, at all relevant times, a shareholder, officer, director, and employee of defendants Invar Consulting Ltd.("Invar") and Genometrica Ltd. ("Genomerica Ltd.").

52.     Upon information and belief, at all relevant times, defendant Ralf Vayntrub acted not only in his individual capacity but also in his capacity as a shareholder, officer, director, employee, and agent of defendants Invar Consulting Ltd. ("Invar") and Genometrica Ltd. ("Genomerica Ltd.").

53.     Plaintiff is employed and has contractual and business relations with Stony Brook as a University Associate Professor in its Department of Electrical & Computer Engineering, State University of New York, Stony Brook, County of Suffolk, State of New York.

54.     Plaintiff's employment at SUNY Stony Brook is at the pay rate of $125,053. per annum for the Academic Year (9 months) and additional sum of $41,000 from the Research Foundation of SUNY for 3 summer months. The plaintiff remains so employed.

55.     Upon information and belief, all of the actions and conduct of the defendant

10

Ralf Vayntrub and the shareholders, officers, directors, employees, and agents of Invar and Genometrica Ltd., as set forth in this complaint were in furtherance of the interests of all defendants and within the scope of their employment.

56.     The amount of damages sought in this action exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

57.     At the beginning of September 2011 at a Holiday Inn, located in Stony Brook, New York plaintiff Vera Gorfinkel was requested by Ralf Vayntrub to attend a meeting in his hotel room, where his son Alexander was also present, and at that time and place defendant Ralf Vayntrub threatened plaintiff with economic blackmail, informing her he had extensive influence with Stony Brook Foundation (RF) and was able to remove her as PI in her laboratory further he would immediately take steps to insure she would not continue to work on Genometrica's existing research at her laboratory or utilizing her laboratory personnel unless she agreed to his demands, to continue the existing Genometrica research after Invar Consulting's last payment for Genometrica's to Stony Brook Foundation (RF) made earlier in June, 2011 that could only be accomplished by means of a deception and subterfuge against RF SUNY by covertly using funds from another ongoing STTR grant for the benefit of Genometrica and if plaintiff did not agree to these conditions Ralf Vayntrub ailing for himself and for his corporations including Genometrica would create and invent a lawsuit against her husband Boris Gorbovitski.

58.     Simultaneously plaintiff Vera Gorfinkel rejected this September 2011 economic blackmail, and informed defendant Ralf Vayntrub that his proposal was not only inappropriate to make to a tenured Professor, a full time employee of SUNY Stony Brook but also illegal as

11

she would never under any circumstances continue to work on Genometrica's project if it created a Conflict of Interest with RF SUNY protocols and procedures and unless and until Ralf Vayntrub would provide RF SUNY with new funds for Vera's new work.

59.     The Final Research Report ("FRR") for defendant Ralf Vayntrub, Geneometrica and Invar Consulting with Stony Brook Foundation (RF) was completed on October 11, 2011 with copies provided and accepted by all defendants who knew personally that all prior research contracted for had been completed with Stony Brook Foundation (RF).

60.     Defendant Ralf Vayntrub immediately followed up which his threat to plaintiff of economic blackmail, as during the second week of September 2011 at SUNY located in Stony Brook, New York plaintiff attended at the offices of Department of ECE, for a meeting with her Department Chair, Prof. Serge Luryi.

61.     Prof. Luryi is Director of Center for Advanced Technologies (Sensor CAT), CAT matching and support (-15% of external funding) is very important for getting SBIR grants).

62.     At this meeting Prof. Serge Luryi told her," ... you robbed Ralf" and upon information and belief the source of the false information directly told to her Department Chair, Prof. Serge Luryi was Ralf Vayntrub

63.     Because of Ralf Vayntrub's false and defamatory statement made to Prof. Serge Luryi, " ... you robbed Ralf" tending to expose the plaintiff to public hatred, contempt, ridicule, and disgrace and such statement discredits the plaintiff in her profession as a teacher and scientist, that plaintiff Vera Gorfinkel did not apply for Full Professor in Fall 2011 as she planned before, as well as did not received matching funds from Sensor CAT where Serge Luryi is a Director.

64.     Upon information and belief, the defendant Ralf Vayntrub made such statement with deliberate intent to injure the plaintiff or out of hatred, ill will, or spite.

12

65.    Upon information and belief, the defendant Ralf Vayntrub made such statement with willful, wanton, and reckless disregard of the plaintiff's rights.

66.    The damage to plaintiff Vera Gorfinkel's reputation and standing in the scientific community reduces her chances of receiving further and future research grants under SBIR program (~ $750,000/year) as a researcher and Principal Investigator.

67.    Shortly thereafter on or about October 5, 2011 plaintiff Vera Gorfinkel provided final report to RF SUNY on all research results and all information obtained by Dr. Gorfinkel's laboratory from 2009 through 2011.

68.    In December 2012 plaintiff Vera Gorfinkel received an E-mail from Nancy Daneau, Deputy to the Vice President for Research, based upon a complaint of patent infringement by the defendant Ralf Vayntrub or agents acting on his behalf, RF SUNY intended to terminate her STTR project in 30 days.

69.    That on January 17th the ongoing STTR project was terminated by the RF SUNY on the basis of Genometrica's false and defamatory allegations that plaintiff Vera Gorfinkel had infringed Genometrica's intellectual property.

70.    Upon information and belief, the defendant Ralf Vayntrub knew or should have known that such false and defamatory statement of patent infringement against plaintiff Vera Gorfinekl would lead to suspension of the project, the Research Agreement between ABMM and the RF SUNY

71.    Upon information and belief, the defendant Ralf Vayntrub made such false and defamatory statement of patent infringement so as to cause the suspension of the project, the Research Agreement between ABMM and the RF SUNY and/or subject her to disgrace and ridicule.

13

72.    The false and defamatory information, that plaintiff Vera Gorfinkel had infringed Genometrica's intellectual property which was ultimately rejected by RF SUNY as baseless and without foundation in law or fact was to fulfill the threats of economic blackmail made by defendant Ralf Vayntrub to plaintiff Vera Gorfinkel at the beginning of September 2011 at a Holiday Inn, located in Stony Brook, New York when he stated at that time unless she agreed to his conditions which she deemed illegal and improper, he would take steps to terminate her research which at that time was an ongoing STTR Grant Project and leave the Lab staff without salary.

73.    However, the RF SUNY after conducting its own investigation found that (i) ABMM did have rights to receive the grant from the NIH (while BioPhotonics (Genometrica) did not), and that (ii) that neither V. Gorfinkel nor ABMM infringed Genometrica's intellectual property.

74.    Thus, the Research Agreement between ABMM and the RF SUNY was reinstated in July, 2012 with the start date of January 28, 2012.

75.    Because of the above events, research in the Lab of Dr. Gorfinkel was willfully and intentionally interfered with and necessary research work delayed.

76.    The plaintiff has suffered injury to her reputation and has suffered mental anguish in her public and private life as a result of defendant Ralf Vayntrub's statements and conduct enumerated herein and all of their foreseeable results, including the injury to her reputation, mental anguish, and emotional distress relating to the false and defamatory statements of patent infringement so as to cause the suspension of the project, the Research Agreement between ABMM and the RF SUNY and/or subject her to disgrace and ridicule.

77.    The statements made in the patent infringement complaint to RF SUNY against plaintiff Vera Gorfinkel are libelous in that the statements are reasonably susceptible of a

14

Defamatory meaning because they all tend to disparage plaintiff in her profession as a tenured professor by alleging illegal conduct.

78.     The statements made in the patent infringement complaint to RF SUNY against plaintiff Vera Gorfinkel are asserted as specific facts, not protected opinion, and would lead a reasonable reader to believe that facts, not opinions, were being conveyed.

79.     The statements made in the patent infringement complaint to RF SUNY against plaintiff Vera Gorfinkel were made with actual malice as defendants knew the statements were false when they were made or made the statements with reckless disregard of whether the statements were false or not.

## FOURTH CAUSE OF ACTION

**(Declaratory Judgment that Patent Infringement issue raised previously by Geometrical against Vera Gorfinkel in 2011 and determined against Genometrica by SUNY (RF) (Issue Preclusion and Collateral Estoppel bars Defendants Vayntrub & Genometrica in 2012 and 2013 to thereafter again claim Patent Infringement by Plaintiff)**

80.     Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs "1" through "79", inclusive, of the Amended Complaint as if fully set forth herein.

81.     At all relevant times, all defendants knew of the existence of the employment agreement between Plaintiff and Stony Brook University Inc., as described above where she is an Associate Professor Department of Electrical & Computer Engineering, State University of New York, Stony Brook, County of Suffolk, and State of New York with an annual salary of $166,000.

82.     All defendants knowingly induced Research Foundation of SUNY ("RF") to (i) commence patent infringement proceedings against plaintiff and (ii) provided her employer with a copy of a Complaint in the United State District Court, Eastern District of New York naming plaintiff as a defendant (Case#11-Cv.5802) which conduct was humiliating, harassing, and

15

disparaging to her career at Stony Brook University.

83. Firstly, Defendant Ralf Vayntrub threatened to file false charges against the plaintiff with the Foundation SUNY ("RF") unless plaintiff continued to undertake research projects on his behalf and on behalf of the other named defendants herein, and when plaintiff refused Ralf Vayntrub's blackmail and extortion threats, he unilaterally decided to formally assert false charges against her with her employer, Stony Brook University in order and force compliance of his wishes by the plaintiff.

84. Ralf Vayntrub, acting for the defendants, instructed their counsel to commence false patent infringement proceedings against the plaintiff with Foundation; and (ii) forcing University to conduct a formal hearing to determine if plaintiff was in violation of her employment Contract and had a conflict of interest.

85. Specifically, on December 16, 2011, RF SUNY's Nancy Daneau sent an E-mail to the plaintiff as Deputy to the Vice-President for Research that RF SUNY that it had received a Complaint from Ralf Vayntrub and Genometrica accusing her, *inter alia,* of patent infringement which plaintiff alleges was false and defamatory and without any basis in fact or law.

86. From January 17, 2012 until July 2012 RF SUNY shut-down Plaintiff's laboratory, depriving her of summer income and halting her research.

87. On or about July, 2012, SUNY cleared Plaintiff of all of Defendants' charges. SUNY concluded from the evidence presented by Vayntrub and Genometrica, Plaintiff did not infringe on any Genometrica patent nor was it in competition under US or NY law. Defendants' claims against Plaintiff were and are without merit.

88. However, prior to the dismissal of the false patent infringement charges, during the months of December, 2011 and January and February, 2012 ,defendants' personnel went to Plaintiff's laboratory spoke to its employees and Plaintiff's colleagues, and spread false

16

information, including but not limited to statements that Plaintiff was to be terminated from SUNY because the Plaintiff was engaged in illegal activities therefore better opportunities existed elsewhere for plaintiff's personnel by working for Defendants and not for the plaintiff as previously.

89.    For the past fourteen (14) years until the actions and conduct of Ralf Vayntrub, acting for the defendants, instructed their counsel to commence false patent infringement proceedings against the plaintiff with her employer, the plaintiff has been successfully practicing her profession in the State of New York, enjoying a successful livelihood as a result of her practice.

90.    At the times complained of in this Amended Complaint, Plaintiff's employment from SUNY Stony Brook was at the pay rate of $125,053 per annum Academic Year (9 months) plus $41,000 from the Research Foundation of SUNY for 3 summer months.

91.    Further as a direct result of defendants' actions, Plaintiff's laboratory was shut down by RF SUNY for an extended period, from January 17, 2012 until July 2012 causing her to lose the $41,000 summer months income from her employer.

92.    Further as a direct result of defendants' actions, Plaintiff has been denied the opportunity for a promotion to a full professorship with SUNY Stony Brook at the pay rate of $210,000, a 25% increase in pay per annum.

93.    Further as a direct result of defendants' actions, Plaintiff was denied the opportunity to create research, develop, and/or reduce to practice, any new intellectual property ("IP"). The denial of opportunities denies Plaintiff the commercialization of IP, which could provide a source of significant income to the Plaintiff and to SUNY, in excess of two million dollars over five or more years. As an inventor of new IP, Plaintiff is entitled to forty (40%) per cent of the royalties received by SUNY on any IP.

17

94.     Also for the prior fourteen (14) years the plaintiff, by reason of her work and writings, her standing in the scientific community with her colleagues was high as during that time she had gained respect and developed a national reputation as a highly competent scholar able to create research, develop, and/or reduce to practice, any new intellectual property presented.

95.     A declaration is sought that Genometrica's patent infringement issue was determined in writing in favor of plaintiff and against Genometrica In writing by SUNY (RF).

96.     A further declaration is sought that defendant Ralf Vayntrub and his named defendant corporations have legal issues not with plaintiff but exclusively with plaintiff's husband and filed false charges of patent infringement against plaintiff with her employer to (i) get her to work for defendants upon their terms and conditions and at the expense of her long time employer and if she did do so (ii) defendants would jeopardize her established career as a professor at the University where she worked as a Principal Investigator ("PI") at a highly sophisticated Research Laboratory located at the University..

**Vayntrub, Invar, Genometrica Research Project Completed in 2011;**
**Vayntrub, Invar, Genometrica Payments for Research to SUNY (RF) ended in 2011;**
**Final Report issued 10/12/11 by SUNY (RF) to Vayntrub, Invar, and Genometrica;**
**No contract existed for new research after 12/31/11 at SUNY (RF) for Vayntrub, Invar,**
**Genometrica;**
**SUNY (RF) informed Vayntrub, Invar, Genometrica it would sign no further research**
**contracts with them after 12/31/11**

97.     Declarations by this Court are required of the rights and relations of the parties.

98.     Declarations are required from this Court that the plaintiff acted properly in rejecting outright the request made by Defendant Ralf Vayntrub for Genometrica that Plaintiff:

a) Continue to work in her laboratory (not on her ongoing STTR project) but on Vayntrub's Genometrica research project after his Research Project had ended and was fully paid for through December 31, 2011 with no new research contract in place after December 31, 2011;

18

b) Was fully compliant with her written contract with SUNY Stony Brook and SUNY (RF) (collectively "SUNY") in her refusal to work further on the Genometrica project after its completion at SUNY (RF) as had been improperly requested by Ralf Vayntrub;

c) Would not violate federal law as NIH funds were already allocated for her ongoing STTR project for a different purpose other than Genometrica Research.

99.     Plaintiff at times in controversy either informed Defendant Ralf Vayntrub personally or he knew and was aware of the following facts:

a) the Genometrica Research Project at SUNY (RF) was completed in 2011; and

b) final contractual payment for research owed by Genometrica to SUNY (RF) was paid in full by Invar in mid-2011 ending Genometrica's SUNY (RF) existing research project; and

c) the Genometrica Final Research Report ("FRR") was issued and accepted by Genometrica in or about October 11, 2011 without objection to its contents ending the research project; and

d) no new contract for additional Genometrica Research was entered into after December 31, 2011 fully and finally ending the Genometrica Research Project thereby ending by its express terms, any obligation by (i) SUNY (RF) or (ii) plaintiff Vera Gorfinkel to undertake any research for Genometrica at SUNY (RF) in her laboratory after December 31, 2011.

100.    Plaintiff is presently the subject of and an individual defendant improperly named in a retaliatory lawsuit, brought by Ralf Vayntrub's corporation Genometrica of which he holds a controlling interest, a case commenced in federal court on false and defamatory series' of claims, (11 Cv. 5802 USDC:EDNY) commenced without a basis in law or in fact against her.

101.    To maintain her professional standing and her continued employment with the

19

State University of New York at Stony Brook as a University Associate Professor in its Department of Electrical & Computer Engineering, State University of New York, Stony Brook, New York requires a Declaration from this Court that she followed the proper legal course in immediately rejecting Defendant Ralf Vayntrub's illegal and improper proposal informing him outright, she could not continue to work in her laboratory on Genometrica's Research Project on his sole terms and conditions.

102.  As a result of her refusing Vayntrub's illegal and improper proposal informing him outright, she could not continue to work in her laboratory on Genometrica's Research Project on his sole terms and conditions, he retaliated with a false and defamatory charge against her of patent infringement, as detailed *infra*

> a) Plaintiff's laboratory was shut down by RF SUNY for an extended period, from January 17, 2012 until July 2012 causing her to lose the $41,000 summer months income from her employer.
>
> b) Plaintiff was denied the opportunity for a promotion to a full professorship with SUNY Stony Brook at the pay rate of $210,000, a 25% increase in pay P/A;
>
> c) Plaintiff was denied the opportunity to create research, develop, and/or reduce to practice, any new intellectual property ("IP"). Including commercialization of IP, this could provide a source of significant income to the Plaintiff and to SUNY, in excess of two million dollars over five or more years. As an inventor of new *IP*, Plaintiff is entitled to forty (40%) per cent of the royalties received by SUNY on any IP.

103.  Plaintiff requires a Declaratory Judgment she acted properly in her dealings with Ralf Vayntrub and Genometrica under Federal and New York Law, did not violate SUNY

20

Stony Brook and SUNY (RF) (collectively "SUNY") Protocols and Policy contained in her contract of employment permitting the possibility of obtaining future advancement of teaching positions including a full professorship.

104.  Plaintiff requires a Declaratory Judgment she acted properly and did not infringe the patents of SUNY (RF) allowing her in the future to create research, develop, and/or reduce to practice, any new intellectual property ("IP") negate the loss of prestige caused by the stigma attached to Ralf Vayntrub and Genometrica filing a formal complaint with her employer she had engaged in patent infringement involving Genometrica's research which was proven baseless and without substance in law or in fact.

105.  Plaintiff requires a Declaratory Judgment she acted properly and did not infringe the patents of SUNY (RF) and Stony Brook and SUNY (RF) (collectively"SUNY") therefore the court can declare that based upon the written favorable determination and decision of SUNY no patent infringement occurred which was rendered in favor of the plaintiff and against the defendants', based upon the complaint of Ralf Vayntrub and defendant corporations including Genometrica invokes the doctrine of issue preclusion on defendants' complaint of patent infringement by Plaintiff Vera Gorfinkel and Ralf Vayntrub and defendant corporations are collaterally estopped from asserting once again in any other forum the issue that plaintiff Vera Gorfinkel

Infringed upon the patents of SUNY (RF) and Stony Brook and SUNY (RF) (collectively"SUNY")

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court grant the following relief:

A.  A temporary restraining order, preliminary injunction, and permanent injunction enjoining defendants and its officers, directors, employees, attorneys, agents,

21

representatives, and servants, and all persons acting under, in concert with or for them, from taking any action that interferes with defendants employment at Stony Brook University Inc. and Research Foundation of SUNY and in her profession as Professor in the field of Electrical & Computer Engineering at the University alleging Patent Infringement involving Genometrica or its claimed IP.

   B.      Money damages against defendants in an amount in excess of Three Million Dollars as a result of defendants' improper and unlawful actions, plus interest, for Causes of Action First, Second, and Third, and Plaintiff's costs and attorneys' fees; and

   C.      On Fourth Cause of Action, Plaintiff seeks a Declaratory Judgment of her rights:

1.     Plaintiff requires a Declaratory Judgment she acted properly in her dealings with Ralf Vayntrub and Genometrica under Federal and New York Law, did not violate SUNY Stony Brook and SUNY (RF) (collectively "SUNY") Protocols and Policy contained in her contract of employment; and

2.     Plaintiff requires a Declaratory Judgment she acted properly and did not infringe the patents of SUNY (RF) allowing her in the future to create research, develop, and/or reduce to practice, any new intellectual property ("IP"); and

3.     Plaintiff requires a Declaratory Judgment that the written favorable determination and decision of SUNY that no patent infringement occurred by plaintiff which was rendered in favor of the plaintiff and against the defendants', based upon the complaint of Ralf Vayntrub and defendant corporations invokes the doctrine of issue preclusion on defendants' complaint of patent infringement by Plaintiff Vera Gorfinkel and Ralf Vayntrub and defendant corporations are collaterally estopped from asserting once again in any other forum the issue of Patent Infringement by the plaintiff Vera Gorfinkel involving Genometrica or its claimed IP.

22

D.    Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by a jury.


VERA GORFINKEL

By/her attorneys,

Dated: Hawthorne, New York
May 3, 2013

Arthur Morrison
Attorney for Plaintiff
11 Skyline Drive
Hawthorne, New York 10532
(T) 914-592-8282
(F) 914-592-3482

William V. Rapp, Esq.
Attorney for Plaintiff
85 River Road
Scarborough New York
10510 (T) 914-945-0630
(F) 914-923-1416
E-mail rappw.@njit.edu

Robert Greenberg, P.C.
Attorney for Plaintiff:
228 Park Avenue So,
Suite 1776
New York, New York
10003 (T) 646-360-0077
(F) 646-328-4518.

23

To:
Attorneys for Defendants

Panagiota Betty Tufariello,Esq.,
The Law Offices of P.B. Tufariello, P.C.
25 Little Harbor Road
Mt. Sinai, NY 11766
631-476-8734
Fax: 631-476-8737
Email: 24yellow@optonline.net


Nicholas Bruce Malito, Esq.
Hofheimer Gartlir & Gross LLP
530 Fifth Avenue, 9th Floor New
York, NY 10036
212-897-7916
Fax: 212-897-4980
Email: nmalito @hgg.com

Robert J. Kenney , Jr.
Hofheimer Gartlir & Gross, LLP
530 Fifth Avenue, 9th Floor
New York, NY 10036
212-897-6919
Fax: 212-897-6933

## VERIFICATION

VERA GORFINKEL, being duly sworn, deposes and says:

I am the plaintiff in the above-entitled action. I have read the foregoing

Amended Complaint and know the contents thereof. The same is true to my knowledge, except as

to matters therein stated to be alleged on information and belief and as to those matters I believe

them to be true.

_V. Gorf_

Sworn to before me this
3rd day of May, 2013

**VERA GORFINKEL**

Arthur Morrison
Notary Public
State of New York
#02M05029969
Qualified in Westchester County
Commission Expires 10/11/2014

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK

--------------------------------------------------------------------x

VERA GORFINKEL

Plaintiff                                    Index# 34172/2011

Against -

RALF VAYNTRUB, INVAR CONSULTING LTD.
GENOMETRICA LTD and
GENOMETRICA RESEARCH, INC.,

Defendants

--------------------------------------------------------------------x

## AMENDED VERIFIED COMPLAINT

I certify compliance with Rule 130.1.of the Rules of the Chief Administrator

Dated: Hawthorne, New York
May 3, 2013

Arthur Morrison,
Attorney for Plaintiff
11 Skyline Drive
Hawthorne, New York 10532
(T) 914-592-8282
(F) 914-592-3482
E-mail **Akatz@xand.com**

Robert Greenberg, P.C.
Attorney for Plaintiff:
228 Park Avenue So,
Suite 1776
New York, New York
10003
(T) 646-360-0077
(F) 646-328-4518.

William V. Rapp, Esq. Attorney
for Plaintiff 85 River Road
Scarborough New York 10510
(T) 914-945-0630
(F) 914-923-1416
E-mail rappw.@njit.edu