UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
VERA GORFINKEL,

                Plaintiff,
v.                                     Case No.: CV 13-3093 (JFB) (AKT)

RALF VAYNTRUB, INVAR CONSULTING LTD.,
GENOMETRICA LTD. and GENOMETRICA
RESEARCH INC.

                Defendants.
-----------------------------------------------------------------x

## BORIS GORBOVITSKI DECLARATION IN OPPOSITION
## TO RULE 12(b)(6) MOTION

BORIS GORBOVITSKI, declares the following to be true, accurate and complete under the penalty of perjury:

1. He is the husband of the plaintiff in this suit and has personal knowledge of events that occurred in the within litigation amongst all of the defendants named and makes this declaration in opposition to the rule 12(b)(6) motion to dismiss.

**Causes of Action Alleged in four Complaints all begin after June, 2011
When last payment for SUNY (RF) Genometrica research made by Invar;
Ralf Vayntrub was personally served with the Summons and offers no Opposition**

2. What is most important at the outset is that time frame for these four causes of action begins after June, 2011 when the last payment for the Genometrica research project was made and Genometrica awaited a copy of the Final Report of the completed technology research that covered the period from 2008 through June, 2011. The Final Report was provided on a removable hard drive by the Principal Investigator (PI) on October 5, 2011 in duplicate, one for SUNY (RF) and a second requested by the defendant Ralf Vayntrub personally. It is not disputed these foregoing events occurred as described.

1

3. The federal court lawsuit was commenced on November 29, 2011 but had claims for relief for periods prior to June, 2011 or dating back from June 2008 up until the completion of the technology research paid for on June 1, 2011 the cut-off date of the contract of SUNY (RF) with Invar.

4. Declarant's position as director and president of Biophotonics (BP) (whose name was changed to Genometrica Research, Inc.,) likewise ended in August 2011 when he was replaced by Alexander Vaintrub who is the son of Ralf Vayntrub.

5. The declaration of Alex Vaintrub does not deny that declarant was the president and director of Biophotonics (BP) from 1999 through 8/8/2011; BP's name changed to Genometrica Research, Inc. on 8/23/2011, after declarant authorized in writing to act for the corporation from 1999 through August 2011 including the time BP sold its stock to Invar.

4. Mr. Ralf Vayntrub is the principal stockholder of Invar and Genometrica Ltd. Both foreign corporations are based in Liechtenstein. Mr. Vayntrub is named personally as he is the prime participant acting for his corporations in events with Vera Gorfinkel after June, 2011 once the SUNY (RF) technology research contract was fulfilled and the final payment by Invar was authorized by him to be paid to the University.

5. Prior counsel in this case, Meltzer Lippe had the summons served upon Ralf Vayntrub personally in Russia and a copy of the affidavit of service is annexed with the translation from Russian into English certified by an official translation service. (Exhibit "A" annexed).

6. Robert Greenberg, Esq., provides a declaration sworn August 20, 2013 annexed to the opposition documents that he picked up the original of Exhibit "A" from

A& M Logos International Inc., a translation service located at 40 Rector Street, New York, New York and took the same from them and personally filed it at the Supreme Court Courthouse located at One Court Street, Riverhead, New York when he appeared to submit an Order to Show Cause on April 4, 2013.

7. Ralf Vayntrub makes no declaration in opposition that he was not personally served as indicated in Exhibit "N" annexed or that he has a defense to any of the allegations contained in the Vera Gorfinkel complaint's Four Causes of Action.

8. A paralegal in Ms.Tufariello's office avers only that she went to the County Clerk's office but no entry was found in the County Clerk's docket for its filing. Mr. Greenberg however avers the Affidavit of Service was accepted for filing and stamped in by the Clerk's Office in the Supreme Court Courthouse located at One Court Street, Riverhead, New York when he appeared to submit an Order to Show Cause on April 4, 2013.

### Invar lacked $30 Million from outset in 2007 onward to date for Development of SUNY Research Technology Never Raised

9. Declarant and his wife Vera Gorfinkel were among a group of stockholders in 2008 who sold all their stock to Invar; along with the transfer of all stock, was transferred the existing License Agreement with SUNY(RF). No agreement existed between BP and SUNY (RF) for development, only technology research. The patents were owned by SUNY (RF).

10. Annexed as Exhibit "E" is a portion of the 2007 business plan (pps. 1-36) commissioned by Invar indicating the need for $30Million dollars in capital by Invar and Ralf Vayntrub to develop the research being undertaken at SUNY (RF) under the existing research.

3

11. Research was ongoing at SUNY (RF) for Invar between 2008 and June 2011with as noted earlier, a final Report issued in duplicate by the PI.

12. The problem for Ralf Vayntrub and Invar in June 2011 was that $2.7 Million had been expended at SUNY (RF) for technology research between 2008 and June, 2011 yet no concurrent expenditure of $30Million had occurred during that same three years through June 2011 to develop a product in commerce based upon the ongoing Laboratory Research at Stony Brook.

**Ralf Vayntrub requested Declarant to assist in obtain $29 Million Investment from Gazprombank in Russia in 2010 which failed in 2011 as Vayntrub could not provide financial documentation satisfactory to Gazprombank showing any sales by Genometrica or assurance of future sales to support return of Investment.**

13. During 2008-2010 Ralf Vayntrub tried to raise funds for commercialization of Genometrica's technology, but all his attempts to do that failed. In 2010 declarant introduced Ralf Vayntrub to Gazprombank with the purpose to obtain $29M investment for commercialization of Genometrica's technology.

14. Extensive work was done by declarant to obtain the $29 Million capital investment from the Bank for Genometrica but it failed as Vayntrub could not provide financial documentation satisfactory to Gazprombank showing any sales by Genometrica or assurance of future sales to support return of Investment.

15. At the time of the June, 2011 cut-off date for the end of the research technology contract with SUNY (RF) where the sum of $2.7 Million had been expended over the past three years, it was clear that:

(a) The $30 million sum required for development back in 2007 (Exhibit "B") had never been obtained by Vayntrub or his Liechtenstein corporations further;

4

(b) In 2011 Gazprombank in Russia did not process a $29 Million investment for Vayntrub and Genometrica and was abandoned by him when he failed to provide requested documentation for the bank to establish the initial company valuation of $100M as per his request and therefore the ability to repay sums being advanced.

**CONCLUSION**

16. The events that begin after June, 2011 described in the Four Causes of Action in the Amended Complaint are totally credible as Vayntrub had expended $4.4 Million to acquire the stock in BP in 2008, and other $2.7Million between 2008 acquisition of BP Stock and June, 2011 final payment to SUNY (RF) for technology research, yet never developed a product in commerce based upon the ongoing Laboratory Research at Stony Brook.

17. Vera Gorfinkels' complaint alleges Vayntrub met with her at the Holiday Inn in Stony Brook and proposed an illegal arrangement to have her continue the Genometrica research using her laboratory and the six (6) PhD scholars and support staff using the funding from NIH for another project ongoing in her lab and not tell the university about the proposal.

18. Unless she did so he would sue the deponent.

19. Vera Gorfinkel said no and an ugly litany of events followed.

20. Plaintiff avers in her complaint that Vayntrub defamed her before the Chair of her Department and to Evelyn Berezin, a Board Member of the Stony Brook Foundation.

21. These are important people in her employment. Vayntrub called her a thief.

5

Had plaintiff stolen Ralf's $ 2.7 Million technology research money? There is no basis for the charge. All of the expenditures of $ 2.7 Million to Vera's staff are itemized to the penny in the records of SUNY (RF).

22. The University never contract to undertake development of the research. Ralf Vayntrub and his corporations were undercapitalized and never from 2008 through the present time had the $30 Million fixed in Invar's Business Plan dating back to 2007 (Exhibit "B") to undertake the development of the technology ongoing and now finished in June, 2011 at SUNY(RF)

23. Ralf Vayntrub did not pay money to continue the research of Genometrica after June 2011 and wanted Vera Gorfinkel to make an illegal pact with him. And by refusing has been subjected to the federal complaint and amended complaint.

24. The State Court Complaint however begins with the events occurring after June, 2011 and Vera Gorfinkel has gone into great detail in her annexed Declaration to state facts supporting such four causes of action and it is not necessary to repeat them

25. Ralf Vayntrub has not made a declaration denying any of the allegations of the amended complaint and there is no indication he is not available to provide one.

26. Vera Gorfinkel has served her University well, and her opportunity for Full Professorship and future grants have been halted by a baseless charge of patent infringement that the University has reviewed and determined she is a non-infringer in 2012.

27. Nonetheless knowing of the determination by SUNY(RF) she had not infringed on any of the SUNY(RF) patents yet thereafter, in the April 2, 2012 Amended Complaint in its 2nd Claim for relief, Genometrica raised the issue all over again.

28. Third parties see Vera Gorfinkel named as a defendant in the April 2, 2012 Amended Complaint (where SUNY (RF) her employer is a co-plaintiff) then conclude she is involved in patent infringement against her own University when there is no evidence it has occurred by her.

29. In fact, SUNY (RF) has disposed of the issue internally restored her to her Laboratory and concluded she is a non-infringer as far as SUNY (RF) is concerned.

30. The Four Causes of action should be sustained and the motion to dismiss should be denied.

I verify the above declaration is true accurate and complete under the penalty of perjury:

Stony Brook, New York
August 19, 2013

_____BORIS GORBOVITSKI